## PATTERSON *v.* KOERNER.

April 5, 1954

No. 39187 59 Adv. S. 35 71 So. 2d 464

*Nate S. Williamson,* Meridian, for appellant.

*Snow & Covington,* Meridian, for appellee.

Lee, J.

This is a lawsuit between sisters. Mrs. Mittie Koerner, by her bill in the Chancery Court of Lauderdale County, against Mrs. Annie Lou Patterson, sought a partition of certain described property in the City of Meridian, and an accounting of rents. The answer of Mrs. Patterson, which she also made a cross bill, denied the allegations of the original bill, averred that she was the

sole owner of the property in question, and sought the cancellation of the deed under which title was vested in her and Mrs. Koerner. The final decree dismissed the cross bill, adjudicated that the parties each owned an undivided one-half interest in the property and appointed a commissioner to make the sale, but postponed the question of accounting for further proof after the sale had been consummated. Mrs. Patterson appealed.

Mrs. Mary C. Allbrook, mother of the parties, on May 1, 1930, executed her last will and testament whereby she bequeathed to Mrs. Patterson all of her property, including the parcel here in controversy, except $2.50 to each of her other heirs. In August 1950 she was very old and was suffering from cancer. She and her son, Dave Allbrook, were threatened with a damage suit because of the son's action in cutting off the water, lights and utilities in his mother's apartment building. An attorney was engaged to, and did, prepare a deed to this property for execution by Mrs. Allbrook to her granddaughter, Mrs. Margaret E. Hurwitz, the daughter of Mrs. Koerner; and on August 14, 1950, she executed the deed by touching the pen, in the presence of the parties, the attorney, Mrs. Hurwitz and Dave Allbrook. Mrs. Patterson and Dave Allbrook signed their names on the deed as witnesses, and the attorney took the acknowledgment.

Four days later, in a deed which recited that "whereas on August 14, 1950, my grandmother, Mrs. Mary C. Allbrook deeded to me the following described property in trust as trustee for Mrs. Mittie Koerner and Mrs. Annie Lou Patterson and whereas I am desirous to terminate the said trust and place the property in the hands of the rightful owners", Mrs. Hurwitz conveyed the property accordingly. About the same time, Mrs. Patterson obtained from her mother a deed to the home place on which they were then living. Mrs. Allbrook died thereafter on September 26.

Mrs. Patterson's position, for support, rested on two propositions to this effect: (1) Her mother did not have sufficient mental capacity to execute the deed; but if so, (2) the deed was for the purpose of hedging against a damage suit, and the property was to be reconveyed to her mother. In either event however, she, as beneficiary in her mother's will, was the sole owner.

On the first proposition, the issue of mental capacity, Mrs. Koerner, Mrs. Hurwitz, E. J. Randall and J. E. Harwell testified that Mrs. Allbrook knew what she was doing. On the contrary, Mrs. Patterson, Dave Allbrook and Dr. Paul Parker testified that she did not have sufficient capacity.

Mrs. Patterson and Dave Allbrook testified to facts which would sustain her second proposition. On the contrary, the evidence of Mrs. Hurwitz and Mrs. Koerner was to the effect that Mrs. Allbrook desired that her granddaughter have this property. The attorney testified that, when he was informed of the prospective lawsuit and of Mrs. Allbrook's desire to give the property to Mrs. Hurwitz, he advised that "now is a good time to give the property to Margaret and put it in trust for the two ladies, Mrs. Patterson and Mrs. Koerner".

The learned chancellor, in his finding of fact, in an oral opinion, denominated the testimony of Mrs. Patterson, Dave Allbrook, Mrs. Koerner and Mrs. Hurwitz as "so exaggerated and biased as to be absolutely unreliable". He held that the purpose, in drawing the deed, was to put the property in trust for the two daughters, the parties to this suit. This conclusion had a reasonable basis from the evidence of the attorney. While expressing the belief that the deed was executed more by the will of her daughters than her own, he held that Mrs. Allbrook understood what property was involved and to whom she was deeding it. He further held that, since Mrs. Patterson was a witness to the deed in question and the grantee in a deed from her mother several days

later, she was not in position to complain about the transaction in her individual capacity.

The signatures of appellant and her brother as witnesses to the execution of the deed, and the subsequent acceptance from her mother of a deed in her own right, justified the conclusion that the evidence of these two witnesses to establish insufficient mental capacity was of little value. Warren v. Sidney's Estate, 183 Miss. 669, 184 So. 806. Actually the chancellor resolved the issue of capacity on the evidence of three witnesses whom he regarded as credible and reliable. He was warranted in concluding that two of these witnesses sustained her mental capacity while the other denied it. When due consideration is given to the rule in Cowart v. Cowart, 211 Miss. 459, 51 So. 2d 775, and the authorities there cited, we can not say that his finding was manifestly wrong.

On the second proposition, it must be remembered that the appellant's distress, for which she sought the aid of the court, arose out of her participation in an act, not in good faith and not in the usual course of business, but in consummation of a scheme and plan to put her mother's property beyond the reach of an execution, in event a judgment should be obtained in the prospective damage suit. She thereby participated in a potential fraud on the prospective judgment creditor. In Crabb v. Comer, 190 Miss. 289, 200 So. 133, this Court said: "It is one of the oldest maxims of the law that no man shall in a court of justice, take an advantage which has his own wrong as a foundation for that advantage." Moreover, one of the maxims of equity is, "He who comes into equity must come with clean hands." In other words, "It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;*

the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." Vol. 1 Pomeroy's Equity Jurisprudence, 4th Ed., Section 397, page 738.

The chancellor was therefore justified, from the evidence, in finding that there was no agreement that the property would be reconveyed to Mrs. Allbrook, and in rejecting the second phase of the appellant's position.

The decree of the lower court is, therefore, affirmed.

Affirmed.

*Roberds, P. J.*, and *Hall, Holmes* and *Ethridge, JJ.*, concur.