238 So.2d 744 (1970)
Naomi J. THIGPEN
v.
Alvin KENNEDY.
No. 45651.
Supreme Court of Mississippi.
February 23, 1970.
Rehearing Denied March 16, 1970.
Roy B. Strickland, Wiggins, for appellant.
Toxey H. Smith, Jr., Wiggins, for appellee.
*745 INZER, Justice.
This is an appeal by Naomi J. Thigpen from a decree of the Chancery Court of Stone County directing her to convey the legal title to two lots in the Town of Wiggins to appellee, Alvin Kennedy. We reverse and enter judgment here for appellant.
Before disposing of this case on its merits, it is necessary for us to pass upon two motions filed by appellee in this cause. They are a motion to strike appellant's brief and motion to strike from the record the opinion of the chancellor. Movant failed to file with his motions briefs in support thereof as required by Mississippi Supreme Court Rule 16(a) and for this reason the motions are dismissed.
Appellee sought to establish a resulting trust and charged in his bill of complaint *746 that in 1965 Lula Terrell owned the two lots in question and desired to sell them. He desired to purchase them. The bill then charged:
Your complainant and the defendant had discussed at length the probability of their marriage and your complainant, using his separate funds, decided to purchase this land from the said Lula Strovall Terrell, who would sell only to him, and to take title to the above described property in the name of the defendant in order to assure that the property would be clearly separate in view of his impending divorce from his present wife. It was agreed by and between the complainant and the defendant that the complainant would pay the purchase price of $1,200 and title would be taken in the name of the defendant to hold for him until he could settle his personal matters.
On the trial of the case appellant supported these allegations by his sworn testimony. The evidence also revealed that the appellee and appellant had unlawfully cohabited together for over four years prior to this transaction and during this time they were engaged in the unlawful liquor business. After the deed was executed, the parties came to a parting of ways because appellant's fifteen year old daughter was pregnant and accused appellee of being the father of the child.
One of the defenses relied on by appellant was that appellee did not come into court with clean hands. The chancellor held that appellee's conduct relative to the illegal liquor business, unlawful cohabitation and the accusations relative to pregnancy of appellant's daughter were all incidental to the land transaction and that the maxim did not apply. In so holding the chancellor evidently overlooked the fact that appellee alleged and testified that his purpose in placing the title to the lots in the name of appellant was to conceal the property from his wife in an impending divorce suit. In other words, it was his intent and purpose to delay and hinder his wife in any claim that she might have against him for alimony. Transfers of this nature and for such purposes are in violation of the statute of frauds and contrary to public policy. In Patterson v. Koerner, 220 Miss. 590, 71 So.2d 464 (1954), we said:
On the second proposition, it must be remembered that the appellant's distress, for which she sought the aid of the court, arose out of her participation in an act, not in good faith and not in the usual course of business, but in consummation of a scheme and plan to put her mother's property beyond the reach of an execution, in event a judgment should be obtained in the prospective damage suit. She thereby participated in a potential fraud on the prospective judgment creditor. In Crabb v. Comer, 190 Miss. 289, 200 So. 133, 135, this Court said: "It is one of the oldest maxims of the law that no man shall, in a court of justice, take an advantage which has his own wrong as a foundation for that advantage." Moreover, one of the maxims of equity is, "He who comes into equity must come with clean hands." In other words, "It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." Vol. 1 Pomeroy's Equity Jurisprudence, 4th Ed., Section 397, page 738. (220 Miss. at 594, 595, 71 So.2d at 466).
The maxim is often stated in the following language, "he who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted." The maxim is not to be lightly considered and brushed aside. It is the duty of the Court to apply it of its own motion when it becomes evident that *747 the facts are such that they call for the application of the maxim. Griffith, Miss. Chancery Practice, § 42 (1950).
The fact that the parties in this case are in pari delicto does not aid appellee. The maxim is not invoked for the benefit of the parties to a fraudulent transaction, but rests upon the proposition that society must be protected. Furthermore, in order for the court to invoke the maxim, it is not necessary for the conduct to be of such a nature as to be punishable as a crime or even to justify legal proceedings of any character. Any wilful act concerning the cause of action which can be said to transgress equitable standards of conduct is sufficient to invoke the maxim.
It is clear from the allegations in the bill of complaint and from appellee's own testimony that he did not come into court with clean hands and that the chancellor was manifestly in error in granting him any relief under the circumstances of this case. For this reason this case is reversed and the judgment will be entered here dismissing appellee's bill of complaint with prejudice.
Reversed and judgment here for appellant.
GILLESPIE, P.J., and JONES, PATTERSON and ROBERTSON, JJ., concur.